UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**CYNTHIA BUTLER**,                                   Case No. 3:13-cv-01361-KI

                    Plaintiff,                    OPINION AND ORDER

    v.

**CAROLYN W. COLVIN,** Acting
Commissioner of Social Security,

              Defendant.


     Robyn M. Rebers
     P.O. Box 3530
     Wilsonville, OR 97070

          Attorney for Plaintiff


     S. Amanda Marshall
     United States Attorney
     District of Oregon
     Ronald K. Silver
     Assistant United States Attorney

1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

Lars J. Nelson
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Cynthia Butler brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for supplemental security income benefits ("SSI").

I affirm the decision of the Commissioner.

## BACKGROUND

Butler protectively filed an application for SSI on July 21, 2009, alleging disability

beginning January 1, 2000.  The application was denied initially and upon reconsideration.  After

a timely request for a hearing, Butler, represented by counsel, appeared and testified before an

Administrative Law Judge ("ALJ") on January 13, 2012.  On March 22, 2012, the ALJ held a

supplemental hearing at which a medical expert, Sally Clayton, M.D., testified.

On April 3, 2012, the ALJ issued a decision finding Butler was not disabled within the

meaning of the Act and therefore not entitled to benefits.  This decision became the final decision

of the Commissioner when the Appeals Council declined to review the decision of the ALJ on

June 17, 2013.

Page 2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ identified the following conditions as Butler's severe impairments: degenerative disc disease with a history of cervical fusions; hepatitis C; fibromyalgia; left shoulder strain; depression; anxiety; borderline intellectual functioning; polysubstance abuse, in remission; and left hip degenerative joint disease.  The ALJ found that these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  Given these impairments, the ALJ found Butler can perform light work, with the exception of climbing ladders, ropes, and scaffolds.  She can occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch and crawl.  She should avoid heights, hazards and heavy equipment.  She can only occasionally perform overhead lifting with her left arm.  Finally, she is limited to simple, routine, tasks with only occasional public contact.  Based on this residual functional capacity ("RFC"), the ALJ concluded Butler is unable to perform her past work, but can perform other work in the national economy, including flagger, airplane cleaner, and electronics worker.

## FACTS

Butler was 37 years old at the time of her alleged onset date of disability.  She did not attend high school.  Butler was convicted of selling methamphetamine in 2009.  As part of her parole obligations, she was working toward obtaining her GED at the time of the hearing.  She

completed a rehabilitation program after her conviction, and reported that she has been clean and

sober since June 5, 2009.  She tested positive for opioids in June 2010 and methamphetamines

and opioids in February 2011.

Butler has worked short stints as a housekeeper, a grocery store clerk, and caregiver for

her mother.  She described suffering from lifelong depression and anxiety.  Butler underwent a

cervical fusion with discectomy in 2000 and a second cervical fusion in 2007, and was diagnosed

with Hepatitis C in November 2009.  In 2010, she was diagnosed with an autoimmune

condition.  She suffered a left shoulder strain in 2009, which she exacerbated in late 2011.

**DISCUSSION**

Butler challenges the ALJ's opinion on the following grounds:  the ALJ failed to properly

assess her credibility, erred in his treatment of the medical evidence, and neglected to formulate

an accurate RFC.

I.    Butler's Credibility

The ALJ found Butler's impairments not as limiting as she reported.  She cooks a little,

does some dishes, and vacuums occasionally.  She watches television, can drive, and is studying

for the GED.  On the weekends, she attends AA meetings and goes to church, and she sees her

parole officer once a month.  She told various care providers that she attended a women's group

once a month, and went to court once a week, that she likes to do puzzles, beadwork, and walk in

the park by her house.  In 2005, she could walk a mile and ride her bicycle.  She worked in the

past despite borderline intellectual functioning.  She alleges disabling mental impairments but

had not sought treatment; she scheduled her mental health treatment appointment because her

probation officer asked her to.  The ALJ suggested medical records did not support disabling

Page 6 - OPINION AND ORDER

symptoms and that treatment for her fibromyalgia and related conditions has been conservative. Finally, the ALJ concluded a history of substance abuse, and possible continued use, reduced her credibility.

Butler argues her recent daily activities are very limited, and her more rigorous activities occurred in 2005 before her second cervical fusion in 2007 and her diagnosis of an autoimmune condition in 2010. Butler takes issue with the ALJ's implication that her ability to work with borderline intellectual functioning somehow makes her testimony less credible. With respect to any lack of mental health treatment, Butler was on medication to treat her symptoms. Additionally, Dale Veith, Psy.D., noted that therapy would be unlikely to help Butler, and Linda Bird, F.N.P., reported treatment had been only minimally effective. Butler questions the ALJ's reliance on examination findings showing normal range of motion, strength and sensation, and controlled inflammatory disease symptoms, arguing these records do not undermine Butler's testimony about the pain she experiences. Butler also questions the ALJ's reliance on her substance abuse problems when he included polysubstance abuse, in remission, as a severe impairment, and when there is no evidence of any continued drug use.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the

claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically

identify the testimony she or he finds not to be credible and must explain what evidence

undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General

findings are insufficient to support an adverse credibility determination, and the ALJ must rely

on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based on

affirmative evidence thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v.

Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).[1]

        There is no evidence of "continued use" of substances, unless the ALJ means beyond the

date Butler repeatedly gives as her clean and sober date.  Similarly, openly admitted past

substance abuse may not say very much about credibility.  However, Butler's lack of candidness

with respect to her substance abuse problem is a proper credibility factor.  Thomas v. Barnhart,

278 F.3d 947, 959 (9th Cir. 2002) ("conflicting information about her drug and alcohol usage" is

a valid reason to discredit testimony).  Here, as the ALJ noted early in his opinion, Butler

repeatedly reported being clean as of June 2009, but tested positive for hydrocodone at her

treating provider's office in June 2010 and tested positive for methamphetamine and opioids in

February 2011.  Tr. 15 (ALJ's statement); Tr. 421 (reporting clean and sober date); Tr. 373 (told

Charles May, M.D., clean for over a year as of 6/22/10); Tr. 390 (tested positive for hydrocodone

_____

        [1]The Commissioner argues the ALJ's reasons need be only sufficiently specific to allow
review, and need not be "clear and convincing."  The Ninth Circuit has repeatedly articulated the
clear and convincing standard when reviewing credibility determinations.  Garrison v. Colvin,
759 F.3d 995, 1015 n.18 (9th Cir. 2014) ("The government's suggestion that we should apply a
lesser standard than 'clear and convincing' lacks any support in precedent and must be
rejected.").

on 6/11/10); Tr. 469 (tested positive for methamphetamine and opioids on 2/2/11, but "absolutely denies substance abuse").

Similarly, Butler's level of activity undermines her testimony about the level of pain she experiences, the extent her fatigue interferes with her daily life, and her alleged problems with social interactions. Although some of the more rigorous activities–like bicycling and walking a mile–she reported in 2005, the Function Report she filled out in October 2009 contains similar statements about her level of activity. She reported her hobbies and interests included reading, watching television, walking, beading, puzzles, biking and boating. In answer to the question about how often and how well she does these things, she reported, "depends–Good. Some I can do some I [can't] at times." Tr. 202. Similarly, she reported going to school for GED classes, taking the bus, talking on the phone, attending a women's group, and going to church "daily–If don't hurt [too] much." Id. Additionally, Butler's past ability to work with borderline intellectual functioning undermines the likelihood that her condition would significantly limit her ability to work.

Finally, while Butler was taking medications to treat her mental health symptoms, the ALJ could take into account her motivation or lack of motivation for seeking more extensive treatment. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (symptoms not severe enough to motivate claimant to seek other forms of treatment "is powerful evidence regarding the extent" of the symptom). In fact, the medical record demonstrated that Butler was "quite cheerful" when in counseling and taking medication. Tr. 381. As I discuss below, whatever Bird or Dr. Veith thought about the limited benefit of mental health treatment is irrelevant as the ALJ properly disregarded those opinions. Similarly, as I discuss below in upholding the ALJ's determination

giving less weight to Bird's opinion, the ALJ's conclusion that Butler's symptoms from her autoimmune condition, fibromyalgia and left shoulder strain are generally controlled with medication is supported by the record.

In sum, the ALJ's clear and convincing reasons were supported by a reasonable interpretation of the record.

II.    Medical Evidence

Butler takes issue with the ALJ's treatment of the opinion prepared by Dr. Veith, as well as an opinion letter offered by Butler's treating provider, Bird.

A.    Dr. Veith

Dr. Veith performed a neuropsychological evaluation of Butler in June 2005 as part of her disability application and an attempt to regain custody of her children.  He opined that Butler's "prognosis is fair, at best."  Tr. 518.  Even if she recovered from her drug addiction, Dr. Veith thought Butler would have difficulty obtaining and maintaining employment due to her anxiety and intellectual limitations.  He diagnosed Butler with psychotic disorder, NOS, rule out; major depressive disorder; social phobia; alcohol, cocaine, and amphetamine dependence; and borderline intellectual functioning.  The ALJ gave some weight to these diagnoses as consistent with the record, but rejected Dr. Veith's opinion about Butler's ability to work as speculative and inconsistent with the record as a whole.  Butler takes aim at the ALJ's rejection of Dr. Veith's opinions about her marked deficit in social functioning and her ability to work.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and

observe the patient as an individual. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. <u>Id.</u> (treating physician); <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. <u>Orn</u>, 495 F.3d at 632; <u>Widmark</u>, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. <u>Widmark</u>, 454 F.3d at 1066 n.2. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ was required to give specific and legitimate reasons for rejecting Dr. Veith's opinions about her social functioning and work limitations. The ALJ pointed to evidence of Butler's ability to socially interact in an appropriate way–she attends AA meetings and goes to church, attends a monthly women's group meeting, and goes to court. In addition, as the ALJ noted, in a more recent examination undertaken by Nick Dietlein, Psy.D., Butler revealed a clear ability "to engage in social interactions at an acceptable level." Tr. 360. One nonexamining physician agreed that Butler could "get along with others, and engage in social interactions at an acceptable level." Tr. 325 (Paul Rethinger, M.D.). Furthermore, testifying medical expert, Dr. Clayton, opined that Butler could engage in teamwork. Tr. 37.

Dr. Veith himself commented that Butler "appears to be about average on social boldness and group orientation. She is reasonably adept at crossing interpersonal distances and making

contact with others.  She is about as much a team player as her peers." Tr. 515.  In addition, in his concluding remarks, he commented that should Butler get to the point of maintaining employment, she "will probably prefer settings in which she is allowed to interact with others but she should not be allowed to become overly dependent on coworkers." Tr. 521.  As a result, the ALJ's RFC captured any concerns Dr. Veith may have had about Butler's ability to interact with coworkers; in any event, the ALJ gave specific and legitimate reasons for discounting Dr. Veith's view of Butler's "marked" limitations in social functioning.

For similar reasons, the ALJ properly rejected Dr. Veith's opinion about Butler's inability to work.  Examining physician Dr. Dietlein, and nonexamining physicians Drs. Rethinger and Lundblad, concluded Butler could perform work that accommodated her limitations.  Testifying medical expert Dr. Clayton concluded Butler could perform "simple, routine tasks." Tr. 37.  The ALJ met his burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ did not err.

B.    Linda Bird, F.N.P.

In November 2011, Linda Bird, F.N.P., submitted a letter explaining that Butler's "chronic pain issues . . . directly impact her ability to work." Tr. 493.  After discussing Butler's diagnoses, Bird noted, "[O]verall it is my professional opinion that [claimant] would have a very difficult time sustaining employment due to her physical limitations and neurocognitive challenges." Tr. 494.  However, Bird conceded she is not an expert in functional assessment, and recommended referral to an occupational rehabilitation facility for that purpose.  The ALJ gave Bird's opinion little weight because she is not an acceptable medical source, medical records

demonstrated medication controlled Butler's symptoms related to her inflammatory condition, and mental treatment could help Butler.  The ALJ concluded the RFC reflects the record as a whole and is consistent with the medical opinions and Butler's activities of daily living.

Butler argues the fact that Bird is not considered an acceptable medical source is not alone a sufficient reason to reject her opinion with respect to the severity of Butler's impairments.  20 C.F.R. §§ 404.1513(d), 416.913(d) (other sources may be considered when evaluating severity of impairments).  In this case, however, that was not the sole reason the ALJ gave.  Butler argues the ALJ's other reasons were not sufficiently specific, and therefore not germane to Bird's opinion.  However, one of the factors the ALJ is permitted to consider is whether the opinion is consistent with other evidence.  SSR 09-03p.  In this case, the ALJ concluded it was not, and supported his conclusion by referring to his "detailed and thorough summary of the facts and conflicting clinical evidence[.]"  Magallanes, 881 F.2d at 751.

For example, although Bird commented on Butler's chronic neck and joint pain in her letter of November 29, 2011, after beginning treatment with Hydroxycholorquine prescribed by Charles May, M.D., Butler reported tolerating the drug, and thinking "something good is starting to happen."  Tr. 368.  She demonstrated no signs of synovitis at that appointment and reported "generally feeling better."  Id. (9/23/10).  In addition, in the year prior to Bird's opinion, Butler had no complaints of neck or joint pain during visits in March and June of 2011, only of a shoulder strain which resolved in part with physical therapy.  Tr. 484 (3/17/11; complaining about abdominal cramping but no other pain);Tr. 480 (6/2/11; complaining of abdominal pain and hot flashes);  Tr. 478 (6/14/11; complaining of fatigue; not depressed); Tr. 476 (7/11/11; primary concern is right shoulder pain; full mobility).  Butler's only complaint of neck pain

occurred on November 8, when she apparently lifted about 25 pounds of potatoes and believed

she had loosened hardware on her cervical fusion.  Tr. 472.  In short, once she began treatment

with Dr. May, she stopped complaining of joint and neck pain.

Similarly, while Butler's symptoms of depression waxed and waned, at least on one

occasion, as I noted above, Bird reported Butler was cheerful while participating in counseling

and taking medication.  Regardless, the ALJ was only required to give one germane reason to

reject Bird's opinion, and he met that requirement.  The ALJ did not err.

III.    Residual Functional Capacity

Hypothetical questions posed to a vocational expert must specify all of the limitations and

restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the

hypothetical does not contain all of the claimant's limitations, the expert's testimony has no

evidentiary value to support a finding that the claimant can perform jobs in the national economy.

Id.

A.    Nonexertional Limitations

Butler argues the ALJ should have included limitations related to her ability to get along

with co-workers.  Specifically, she contends Dr. Veith's 2005 examination reveals significant

limitations in her ability to interact socially due to her anger, difficulty getting along with others,

introversion, and sensitivity about her intellectual deficits.  Butler argues Dr. Clayton, the

testifying medical expert, agreed with the need to limit Butler's contact with co-workers.  The

ALJ assigned "great weight" to Dr. Clayton's opinion, but, Butler argues, neglected to include in

Butler's RFC any limitations related to co-workers.  Finally, in the Mental Residual Functional

Capacity Assessment ("MRFC"), Dr. Rethinger assessed Butler as moderately limited in her

Page 14 - OPINION AND ORDER

ability to get along with coworkers or peers without distracting them, although the ALJ neglected to account for this limitation, Butler argues.

As an initial matter, while Dr. Rethinger checked as moderate Butler's limitation in getting along with coworkers in Section I of the MRFC, in the narrative section of his report he commented, "Cl is able to get along with others, and engage in social interactions at an acceptable level. Due to MDD and Anxiety D/O, cl may do best in more independent work setting." Tr. 325. The ALJ did not err in relying on Dr. Rethinger's narrative section, rather than the summary portion of the report. See King v. Colvin, No. 6:13-cv-00765-HZ, 2014 WL 2040107, at *3 (D. Or. May 12, 2014) (ALJ relies on narrative, not checked boxes in Section I); Israel v. Astrue, 494 F. App'x 794, 797 (9th Cir. Oct 12, 2012) (same).

With respect to Dr. Clayton's testimony, the colloquy between the ALJ and the medical expert went as follows:

> Q: And with respect to the moderate on social, could she have some contact with the public, no contact with the public?
>
> A: I would say some contact with the public.
>
> Q: So if I said occasional meaning up to one-third of the time, would that work?
>
> A: Yes.
>
> Q: And in terms of contact with coworkers, would there be any limitation?
>
> A: I would say the same thing, that I would want to limit the contact.
>
> Q: Okay. And could such a person do teamwork?
>
> A: Yes.

Tr. 37.

Page 15 - OPINION AND ORDER

Butler interprets Dr. Clayton's testimony to require a limitation related to Butler's social interactions with coworkers, but Butler's interpretation is but one reading of the testimony. The ALJ could reasonably interpret Dr. Clayton's testimony to mean any impairment Butler experiences in interacting with coworkers is not as severe as one involving the general public since she can participate in teamwork.

In addition to Dr. Rethinger's opinion, the ALJ noted Butler's daily activities, which involved many social interactions such as attending church, a women's group, and AA meetings, as well as the opinion of Dr. Dietlein who found Butler "clearly able to engage in social interactions at an acceptable level." Tr. 20 (citing Tr. 360). Linda M. Fishman, Ph.D., also described Butler as "respectful and appropriate to the situation. She engaged in spontaneous friendly conversation, rapport was well established, and she responded openly to the examiner's questions." Tr. 352. Similarly, Bird described Butler as a very pleasant woman. See e.g., Tr. 379, 384, 387, 390, 395. As a result, contrary to Butler's argument, Dr. Dietlein's opinion was consistent with the record, and the ALJ properly disregarded the only contradictory opinion given by Dr. Veith.

In sum, the ALJ's decision not to include limitations related to coworker contact was supported by substantial evidence in the record.

B.    Exertional Limitations

Butler additionally argues the RFC failed to accommodate the numbness in her arms, the limitations on her ability to lift and carry, and her limited ability to stand and walk.

The ALJ relied on the Physical Residual Functional Capacity Assessments prepared by Sharon B. Eder, M.D., and Martin Kehrli, M.D. Both doctors interpreted the medical records as

reflecting full range of motion in shoulders, elbows, wrists and small joints, hips, knees, and feet, and only mild synovitis in her hands. Records also indicated Butler was "moving easily and without obvious pain," as demonstrating "essentially normal" range of motion, and as having "good grips in both hands." Tr. 367. The ALJ limited Butler's lifting requirements in order to accommodate symptoms supported by her medical record. To the extent Butler relies on her own testimony to support additional limitations, the ALJ did not err in finding that testimony less than credible.

Butler also argues the ALJ should have included limitations related to her limited ability to stand and walk, but she relies entirely on her own testimony. The ALJ properly concluded Butler's testimony about the extent of her limitations was not credible. An ALJ is not required to incorporate limitations that are not supported by substantial evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

In sum, the ALJ did not err in assessing Butler's RFC.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ____29th____ day of October, 2014.

        /s/ Garr M. King_____
        Garr M. King
        United States District Judge

Page 17 - OPINION AND ORDER